CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

May 01, 2025

Laura A. Austin, Clerk
BY: /s/ K. Lokey
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No.** 5:25CR7 |
| | : | |
| **GUIHUI PAN** | : | |

## AGREED STATEMENT OF FACTS

This Agreed Statement of Facts briefly summarizes the facts and circumstances surrounding the criminal conduct at issue in this case in order to provide an independent factual basis for Guihui PAN's guilty plea. It does not contain all of the information obtained during this investigation and applicable to an accurate Presentence Report and Sentencing Guidelines calculation.

This Statement of Facts is not protected by proffer agreement or any other agreement and shall be wholly admissible at trial notwithstanding any Rules or statutes to the contrary, including but not limited to, Federal Rules of Evidence 408 and 410, and Federal Rule of Criminal Procedure 11.

1.      Beginning at a date unknown, but no later than in or around January 2022, and continuing through a date unknown, but at least on or about June 21, 2023, in the Western District of Virginia and elsewhere, the defendant GUIHUI PAN did knowingly combine, conspire, and agree with other persons known and unknown to the United States to commit an offense against the United States in violation of Title 18, United States Code, Section 1952(a)(3), to wit: to travel in interstate and foreign commerce and to use one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on, and facilitate the promotion,

1

management, establishment and carrying on, of one or more unlawful activities, that is, money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and thereafter to perform acts to promote, manage, establish, and carry on, and to facilitate the promotion, management, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

2.      It was the object of the conspiracy for the defendant, PAN, CC-1, CC-2, CC-3, and other co-conspirators, to unlawfully enrich themselves by traveling in interstate and foreign commerce and using one or more facilities in interstate and foreign commerce with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on, of one or more unlawful activities, that is, money laundering, and by laundering the proceeds of wire fraud.

3.      The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

a.      The co-conspirators each participated in a scheme in which they used fraudulently obtained gift-card balances to purchase high-value consumer electronics for shipping and resale in foreign commerce.

b.      CC-2 and CC-3 purchased fraudulently obtained gift-card redemption codes with positive balances from card merchants using the WeChat messaging application and other means.

c.      CC-2 and CC-3 provided PAN and CC-1 with redemption codes for gift cards issued by Corporation-1 and other corporations and online account login information for accounts with Corporation-1 that were loaded with multiple positive-balance gift cards.

2

d.     The gift card information distributed by CC-2, CC-3, and other members of the conspiracy to PAN, CC-1, and others came in the form of gift card numbers, PINs, and/or Corporation-1 online-account login information sent to PAN, CC-1, and others using the WeChat messaging application and other means.

e.     The positive gift-card balances were originally purchased directly from Corporation-1 by fraud victims.  These victims had been fraudulently induced by telephone scammers or other electronic means, using interstate communications facilities, to purchase the gift cards as payment for falsely claimed debts or fraudulent services.

f.     As examples, these fraudulent schemes included:

    i.     A telephone scam related to a cable provider;

    ii.     Callers impersonating government personnel and falsely claiming victims needed to pay money to resolve alleged identity theft;

    iii.     A telephone scam related to victims' bank accounts;

    iv.     A telephone scam related to a ticket-sales platform; and

    v.     Scammers telling victims that there were problems with the victims' computers, such as hacking, and that victims had to pay money to have the problem fixed.

g.     PAN, CC-1, CC-2, CC-3, and others involved in the scheme knew that the gift-card funds had been derived from an illegal activity.

h.     PAN and CC-1, at the direction of CC-2 and CC-3, used the fraudulently obtained funds associated with the gift cards at Corporation-1's stores throughout the United States to purchase, among other items, high-value consumer electronics.  These purchases conducted by PAN and CC-1 were financial transactions that promoted, managed, established, carried on, and attempted to promote, manage, establish, and carry on laundering of the gift card funds.

i.      PAN and CC-1 were told by CC-2 and CC-3 that the gift card funds they received needed to be spent quickly or the gift cards would no longer work.  At times, PAN and CC-1 returned merchandise purchased with the gift cards to obtain new, "clean" gift cards with funds that did not need to be spent as quickly as the original gift cards.  As a result, PAN, CC-1, CC-2, CC-3, and others involved in the scheme knew that the transactions at Corporation-1 and other corporations using the gift-card funds were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of unlawful activity.

j.      PAN and CC-1, at the direction of CC-2 and CC-3, traveled from Brooklyn, New York to destinations around the United States to conduct such transactions at Corporation-1's stores and other stores using the fraudulently obtained gift-card information received from CC-2 and CC-3.  These trips were taken with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of money laundering.

k.      PAN and CC-1, at the direction of CC-2 and CC-3, transported high-value consumer electronics and other items ultimately purchased with the gift cards back to New York to be taken into the possession other co-conspirators, who repackaged the items and shipped them via common carrier to foreign destinations for resale.  PAN and other co-conspirators who brought goods purchased using the fraudulently obtained gift cards received compensation from CC-2, CC-3, and others for the items they brought back to New York for shipment and resale.

4.      In furtherance of the conspiracy, and to accomplish its object, the defendant GUIHUI PAN, together with others known and unknown to the United States, committed and

4

caused to be committed various overt acts, including the following, within the Western District of Virginia and elsewhere:

   Overt Act No. 1:  On or about June 13, 2023, PAN and CC-1 traveled in a vehicle on Interstate 81 through the Western District of Virginia en route from New York to Texas and elsewhere to make purchases of high-value consumer electronics using gift cards received from CC-2 and CC-3.

   Overt Act No. 2:  On or about June 21, 2023, PAN and CC-1 traveled in a vehicle on Interstate 81 through the Western District of Virginia carrying high-value consumer electronics purchased by PAN and CC-1 in Texas and elsewhere using gift cards received from CC-2 and CC-3.

   Overt Act No. 3:  On or about June 13, 2023 and on or about June 21, 2023, while traveling through the Western District of Virginia, PAN used facilities in interstate and foreign commerce to communicate with other co-conspirators outside the Commonwealth of Virginia regarding the scheme.

   5.  This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all the facts surrounding the defendant's case.

   6.  The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

5

I, Guihui PAN, have reviewed the above Statement of Facts with my attorney and believe the facts are true and correct. I agree that had this matter proceeded to trial, the United States would have presented the facts outlined above through admissible evidence beyond a reasonable doubt.

Date: 2/24/2024

_____
**GUIHUI PAN**
**Defendant**

Date: 12/27/2023

_____
**CHARLES FITZGERALD, ESQ.**
**Counsel for Defendant**

Had this matter proceeded to trial, the United States would have proved the facts outlined above beyond a reasonable doubt. The government reserves the right to present additional evidence at the time of sentencing regarding relevant conduct of the defendant.

Date: August 8, 2024

_____
Vito A. Iaia For
**PAUL G. REAM**
**Special Assistant United States Attorney**
**Virginia Bar No. 92472**